Penn Hills School District, Petitioner *v*. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 13, 1979, before Judges CRUMLISH, JR., MENCER and CRAIG, sitting as a panel of three. Reargued September 9, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG and MACPHAIL. Judge WILLIAMS, JR. did not participate.

*John M. Tighe, Tarasi & Tighe,* for petitioner.

*Stephen B. Lipson,* Assistant Attorney General, with him *David R. Confer* and *Dan Schuckers,* Assistant Attorneys General, *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Acting Attorney General, for respondent.

*William Fearen,* with him *Michael I. Levin,* for intervenor, Pennsylvania School Boards Association.

OPINION BY PRESIDENT JUDGE CRUMLISH, February 3, 1981:

An Unemployment Compensation Board of Review decision awarding benefits to a school bus driver whose working days were lost to inclement weather is reversed.[1]

Catherine A. Baratta, a school bus driver, was employed by the Penn Hills School District both prior to and after the controversial school days during the 1977-78 school year. Repeated snowstorms cancelled

---

[1] The present Opinion and Order effectively withdraws and replaces this Court's prior Opinion and Order in *Penn Hills School District v. Unemployment Compensation Board of Review,* 410 A.2d 1320 (1980). This case was not previously reported in the Pa. Commonwealth Court Reports. .

pupil attendance in the district for seven non-consecutive days in January, 1978.[2] Student bus transportation for those days was also cancelled. Baratta then applied for unemployment compensation.

The referee and the Board affirmed an award of benefits made by the Office of Employment Security, determining that the claimant was (1) "unemployed" within the definition proscribed by Section 4(u)(II) of the Unemployment Compensation Law[3] regardless of the possibility that the lost days would be made up in the future, and (2) "able to work and available for suitable work" and was genuinely and realistically attached to the labor market as mandated by Section 401(d) of the Law.[4]

Penn Hills argues that benefits are not due a public school employee whose school year work schedule is simply revised if there is no actual loss of work or wages. Penn Hills contends the Board would convert the unemployment compensation scheme into a "bonus" system whereby a driver would make full

---

[2] School was not held and consequently Baratta did not work on January 9, 10, 11, 18, 20, 26 and 27, 1978, corresponding to the compensable weeks ending January 14, 21 and 28, 1978.

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §753(u), provides in pertinent part:

(u) 'Unemployed.'

An individual shall be deemed unemployed ... (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

[4] 43 P.S. §801(d) explains that:

Compensation shall be payable to any employe who is or becomes unemployed, and who—

....

(d) Is able to work and available for suitable work....

wages for the school term plus the "snow" days which were not lost but reassigned as required by law.[5] Although we have no doubt that she is implicitly if not explicitly employed for a school term which is contingent upon the number of *actual* school days, this argument is persuasive but not dispositive.

The issue is whether Section 401(d) allows a school bus driver no compensation for "snow days."[6] The Board argues that the driver is not unavailable for suitable work on those cancelled class days because either she returned to work when recalled or the lost days were rescheduled for later in the term. We disagree.

We have undisputably held that the test of "availability" requires that a claimant not only be ready, willing and able to accept either temporary or permanent suitable employment at any time by another employer, see *Tokar v. Unemployment Compensation Board of Review*, 35 Pa. Commonwealth Ct. 241, 385 A.2d 634 (1978), and *Ritter v. Unemployment Compensation Board of Review*, 34 Pa. Com-

---

[5] Penn Hills maintains that the "make-up" day requirement is more than a mere possibility, rather it is legislatively mandated insofar as Section 1501 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §15-1501, requires "at least one hundred eighty (180) days of instruction for pupils" and provides that "[n]o days on which the schools are closed shall be counted as days taught...." But *see Scanlon v. Mount Union Area Board of School Directors*, 51 Pa. Commonwealth Ct. 83, 415 A.2d 96 (1980), and *Scanlon v. Mount Union Board of School Directors*, 47 Pa. Commonwealth Ct. 409, 408 A.2d 555 (1979).

[6] Our scope of review in unemployment compensation cases is clear. Since the question of claimant's availability for work was resolved by the fact finder, we can only overturn the Board's decision for mistakes of fact, errors of law, or findings which are unsupported by substantial evidence. *See Unemployment Compensation Board of Review v. Molitoris*, 24 Pa. Commonwealth Ct. 360, 364, 356 A.2d 863, 865 (1976).

monwealth Ct. 68, 382 A.2d 1255 (1978), but to "actually and currently be attached to the labor force." *Quiggle Unemployment Compensation Case*, 172 Pa. Superior Ct. 430, 435, 94 A.2d 367, 370 (1953), *cited in Tokar v. Unemployment Compensation Board of Review*, *supra* at 246, 385 A.2d at 636. Although questions of fact, such as whether a claimant is able to perform a particular service or whether a reasonable opportunity exists for obtaining that work in the community, are usually within the Board's dicision process, *Goodwin v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 285, 378 A.2d 1308 (1977), *Tokar* reminds us that in some cases, "where the period for which a claimant is available for work is unreasonably short, it may be patently untenable to claim that a reasonable possibility for securing temporary employment exists." *Id.* at 249, 385 A.2d at 637. In the *Pinto Unemployment Compensation Case*, 168 Pa. Superior Ct. 540, 542, 79 A.2d 802, 803 (1951), the fact that the claimant expected to be recalled by her former employer within one or two weeks and intended to return rendered her unavailable for work "unless it appears that there was a reasonable opportunity for securing such work for such a limited duration in the vicinity in which she lived." Like *Pinto*, but unlike *Tokar* where claimant's leave of absence was for an indefinite duration, Baratta was available only as long as the snowstorm caused the school closing, but at best no more than three consecutive days.

Further, as to availability we have consistently denied unemployment compensation benefits for school employees who fully expect and intend to return to work at the commencement of the next school term.[7]

---

[7] *See Davis v. Unemployment Compensation Board of Review*, 39 Pa. Commonwealth Ct. 146, 394 A.2d 1320 (1978) (cafeteria worker); *Sude v. Unemployment Compensation Board of Review*,

In *Calvano v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 79, 83, 368 A.2d 1367, 1369 (1977), we held that school employees are ineligible for benefits during summer months "because they are not then available for suitable work without limitation and they are not, therefore, actually and permanently attached to the labor force." In *Chickey v. Unemployment Compensation Board of Review*, 16 Pa. Commonwealth Ct. 485, 332 A.2d 853 (1975), this Court concluded that employees who did not work under formal written agreement but had under a long-standing policy been listed on the school rolls for the purpose of post-summer employment were not available for suitable work.

The Board attempts to distinguish this line of cases, representing that prescheduled summer and other between-term, non-work periods on the school calendar are distinct from the sudden break in work resulting from an unforeseen weather emergency. Facially, there is cause for pursuing this reasoning but to our reading, Section 401(d)'s implication is clear, especially considering the circumstances. A claimant must be actually and currently attached to the labor force so as to be ready and willing to accept suitable employment. Clearly, Baratta's school term was entirely dependent upon a contractually-mandated school year consisting of 180 instructional days and 12 hours of safety meetings conducted by the employer. For the present year and, in fact, for the last 11 years, she had counted on working at least a 180-day school year. In fact, Baratta not only intended and expected to, but

---

43 Pa. Commonwealth Ct. 533, 402 A.2d 1122 (1979) (part-time teacher); *Fitterling v. Unemployment Compensation Board of Review*, 41 Pa. Commonwealth Ct. 113, 398 A.2d 744 (1979) (full-time teacher). *Compare Cunningham v. Unemployment Compensation Board of Review*, 42 Pa. Commonwealth Ct. 226, 400 A.2d 681 (1979).

actually did, return to work for the same employer after the inclement weather had passed, and is thereby rendered ineligible for benefits.

Finally, the Board expresses concern that a Section 401(d) denial of benefits invites charges of denial of "equal treatment" of school employees under Section 404(g) of the Law, 43 P.S. §804(g), these consequences being "out of conformity" with corresponding federal law. This concern is misplaced. School employees are subject to those same standards and restrictions that any other unemployment compensation claimant must face, no more—no less. There is no irrebuttable presumption against school employees, *Fitterling v. Unemployment Compensation Board of Review*, 41 Pa. Commonwealth Ct. 113, 398 A.2d 744 (1979), nor is there any significant difference in treatment between the line of the studied school employee cases and those decisions on similar claims of industrial employees in the private sector.[8]

Reversed.

### ORDER

This Court's prior Opinion and Order dated February 18, 1980, is withdrawn, and the Unemployment Compensation Board of Review order dated July 28, 1978, granting benefits to Catherine A. Baratta, is hereby reversed.

### AMENDED ORDER

Now, February 17, 1981, our prior Order dated February 3, 1981, is amended as follows:

---

[8] *See Lybarger Unemployment Compensation Case*, 418 Pa. 471, 211 A.2d 463 (1965), *aff'g* 203 Pa. Superior Ct. 336, 201 A.2d 310 (1964). And *see Holets v. Unemployment Compensation Board of Review*, 39 Pa. Commonwealth Ct. 38, 394 A.2d 1299 (1978).

"This Court's prior Opinion and Order dated February 15, 1980, is withdrawn, and the Unemployment Compensation Board of Review order dated July 28, 1978, granting benefits to Catherine A. Baratta, is hereby reversed."